IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINI
WHEELING DIVISION

**FILED**

MAY  1 2026

U.S. DISTRICT COURT- WVND
WHEELING, WV 26003

DIANA MEY,

      Plaintiff,

v.

Civil Action No. 5:26-cv-95

HEADSTART WARRANTY GROUP,
LLC; AIM AI LLC d/b/a
SAFEGUARD MY CAR, LLC

      Defendants.

## COMPLAINT

Plaintiff Diana Mey ("Plaintiff") states as follows for her Complaint against Defendants HeadStart Warranty Group,, LLC and AIM AI LLC d/b/a Safeguard My Car, LLC ("Defendants"):

### PRELIMINARY STATEMENT

1. Plaintiff Diana Mey brings this lawsuit under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. Plaintiff also brings this lawsuit under the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6F-501 and 601, a state statute prohibiting abusive, unfair, and deceptive telemarketing practices.

2. The Plaintiff brings this action under the TCPA and the WVCCPA alleging that AIM AI LLC d/b/a Safeguard My Car, LLC sent at least one prerecorded telemarketing call on behalf of Defendant HeadStart Warranty Group LLC promoting their goods and services, to Plaintiff's phone number which is registered

1

on the National Do Not Call Registry. This call was made without Plaintiff's prior express written consent.

## PARTIES AND JURISDICTION

3. The Plaintiff, Diana Mey, is an individual residing in Wheeling, West Virginia.

4. Defendant, AIM AI LLC d/b/a Safeguard My Car, LLC is a company headquartered in Orlando, Florida and is the party who actually sent the Plaintiff the prerecorded telemarketing calls at issue on behalf of Defendant HeadStart Warranty Group LLC, the service contract company.

5. Defendant HeadStart Warranty Group LLC is a limited liability company headquartered in Dallas, Texas and who does business in this District.

## Jurisdiction & Venue

6. At all relevant times the Defendants conducted business in West Virginia, solicited business in West Virginia, engaged in a persistent course of conduct in West Virginia, and/or derived substantial revenue from products and/or services sold in West Virginia.

7. Because several of Plaintiff's claims arise under federal law, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

8. This Court has general personal jurisdiction over Defendant HeadStart Warranty Group, LLC because it is registered to do business in West Virginia, thereby consenting to the exercise of general personal jurisdiction in West Virginia.

9. This Court has specific personal jurisdiction over Defendant AIM AI, LLC d/b/a

2

Safeguard My Car, LLC because it sent calls into this District, including as part of its efforts to further the joint business enterprise in which it was engaged with HeadStart Warranty Group LLC.

10.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were sent into this state and District.

## OPERATIVE FACTS

11. Defendants HeadStart Warranty Group LLC ("HeadStart") is a seller and guarantor of vehicle service contracts.  HeadStart is the guarantor of the vehicle service contracts and is the entity that will purportedly pay a covered repair under the contract.

12. Defendant HeadStart outsources both the lead generation, intake, and customer service and financing sides of its business.  Specifically, HeadStart uses Defendant AIM AI LLC d/b/a Safeguard My Car, LLC ("Safeguard") to place the illegal calls at issue, which HeadStart pays for.

13.  To generate business for its vehicle service contracts, Safeguard physically placed the illegal calls at issue at the direction of Defendant HeadStart.

14. To generate business for this joint enterprise, Safeguard places illegal prerecorded telemarketing calls on HeadStart's behalf and at HeadStart's direction.

15. To reach as many customers as possible over the telephone, Defendants rely on the use of automated tools to place telemarketing phone calls that can reach thousands of potential customers *en masse.*

16. Many of these calls are also placed to consumers who registered their phone

3

numbers on the federal Do Not Call registry, as per Plaintiff's experience.

17. These same two Defendants are currently being sued in the United States District Court for the Middle District of Pennsylvania in a class action case styled **Friel v. Line 5, LLC, No. 3:24-cv-1866 (M.D. Pa. Aug. 21, 2025)** for prerecorded calls that played an identical recording.

18. Plaintiff's wireless telephone number (the "Number"), 304-280-XXXX is used solely for personal residential purposes.

19. Plaintiff registered this Number on the National Do Not Call Registry in 2003 and it has been continuously listed on the Registry since 2003.

20. Plaintiff has never been a customer of the Defendants, nor has she asked or inquired to be a customer of any of the Defendants.

21. Despite that, Plaintiff received at least one prerecorded telemarketing call from Safeguard sent on behalf of HeadStart, on October 17, 2024 from spoofed Caller ID 864-351-5782.

22. The call began with a recorded message that included fake typing and office background noise, possibly using an Artificial Intelligence (AI) robot or Mechanical Turk.

23. Defendant Safeguard uses the fake name "Vehicle Service Department" to obfuscate their identities and themselves as the source of the illegal call Plaintiff received.

24. However, to ascertain the identity of the individuals calling her illegally, and for no other reason, Plaintiff engaged with the caller.

4

25. The call included a prerecorded voice that followed this script which was substantially similar to the script detailed in the Friel class action complaint:

Hey Diana, my name is Adam. I'm calling on behalf of the Vehicle Service Department. How are you doing today?

26. Plaintiff replied, "pretty good." The call continued:

That's great to hear Diana. So the main reason for the call is to see if you still have some type of coverage on your vehicle. I just want to confirm that you're still driving a Nissan right?
Yes.
And how are you liking it so far?

27. The AI/Mechanical Turk, "Adam" continued with a marketing script, and asked the Plaintiff for the mileage of her car, asked about the car's condition, and then connected the call to a live sales agent, named "Thomas".

28. Unlike the AI/Mechanical Turk, Thomas was clearly a human being. He asked the same questions, explained the protection plan and what was included.

29. When Plaintiff asked Thomas for the name of his company, Thomas said his company was HeadStart Warranty Group and that HeadStart was "the administrator that would be covering your vehicle." When Plaintiff asked, Thomas provided a call back number of 800-853-7773, the identical phone number agents provided to the plaintiffs in the Friel complaint.

30. In addition, as detailed in the Friel complaint, after receiving unwanted illegal calls on behalf of HeadStart, in August 2024 (two months before Plaintiff Mey received the call at issue in this matter) one of the Friel plaintiffs put Defendant HeadStart on notice as to the illegality of the calls when he wrote to them about the calls he had received on behalf of HeadStart.

31.  HeadStart is liable for Defendant Safeguard's conduct and telemarketing calls placed by Safeguard and transferred to HeadStart in order to generate customers, including the Plaintiff, for HeadStart and its agents.

32. Moreover, with full knowledge that HeadStart was violating the TCPA's do not call registry provisions and prerecorded call provisions, HeadStart did nothing.

33.  HeadStart thus had full knowledge of Safeguard's illegal conduct and did not terminate or discipline them, thus implicitly ratifying their actions and endorsing their illegal behavior.

34.  The aforementioned facts also demonstrate that HeadStart failed to supervise Safeguard or enforce their compliance with applicable laws and regulations.

35. Upon information and belief, HeadStart was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients using AI technology, and only send them the interested ones.

36.  Upon information and belief, HeadStart hired Safeguard to orchestrate an *en masse* telemarketing campaign to dial and screen telephone numbers that it directed.

37.  Indeed, HeadStart's relationship with Defendant Safeguard contains numerous hallmarks of agency which, upon information and belief, were memorialized in the Terms of Use agreement governing Safeguard's platform services.

38.  Upon information and belief, HeadStart controlled the content of Safeguard's telemarketing, including by, according to the explicit terms of the agreement, *providing Safeguard the telephone numbers it wanted Safeguard to call.*

6

39. Finally, HeadStart could have terminated Safeguard.

40. It did not.

41. A reasonable seller like HeadStart whose agents are making calls using prerecorded voices would investigate the reasons why their agents and telemarketers would be calling cellular telephone numbers using illegal prerecorded messages absent the consent that HeadStart did not obtain, despite providing Safeguard the numbers to call.

42. It did not.

43. As such, they knowingly ratified Safeguard's conduct.

44. HeadStart also ratified Safeguard's conduct because, with knowledge that it was hiring Safeguard to place non-consensual prerecorded calls, they accepted the Plaintiff's lead and tried to sell the Plaintiff a car warranty.

45. HeadStart accepted the AI call transfer from Safeguard and then utilized it for a benefit by continuing to promote its services to Plaintiff.

46. The FCC has instructed that sellers such as HeadStart may not avoid liability by hiding behind third party agents and outsourcing telemarketing to third parties, such as Safeguard:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted,

7

because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC,* 28 FCC Rcd. 6574, 6588 ¶ 37 (2-13) (footnotes and alteration marks omitted).

47. Defendants, acting directly or through one or more intermediaries "spoofed" their call by transmitting phony caller identification information so that Plaintiff did not know the true source of the call.

48. Defendants, acting directly or through one or more intermediaries, failed to disclose truthfully, promptly and in a clear and conspicuous manner to the Plaintiff (a) the identity of the seller, (b) that the purpose of the call was to sell goods or services, or (c) the nature of the goods or services.

49. Plaintiff was harmed by the call. She was temporarily deprived of the legitimate use of her telephone and her privacy was improperly invaded. Moreover, the call injured Plaintiff because it was frustrating, annoying, and disturbed the solitude of Plaintiff.

## COUNT I
### Violations of the TCPA
### (47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2))

50. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

51. Defendants and/or their affiliates, agents, and/or other persons or entities

8

acting on Defendants' behalf caused to be made 1 or more prerecorded telemarketing calls to Plaintiff's residential telephone in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

52. Despite her residential Number being registered on the DNC Registry, Plaintiff received 1 or more prerecorded telephone calls by or on behalf of Defendants in violation of the TCPA.

53. Defendants' violations were negligent, willful, and/or knowing.

## COUNT II

### Violations of the TCPA

### (47 U.S.C. § 227(c) and 47 C.F.R. § 64.1601(e))

54. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

55. Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, initiated 1 or more telemarketing calls which failed to transmit the requisite caller identification information and which likewise failed to permit an individual to make a do-not-call request during regular business hours. *See* 47 C.F.R. § 64.1601(e).

56. The Defendants' violations were willful and/or knowing.

## COUNT III

### Violations of the WVCCPA, W.Va. Code §§ 46A-6F-112 and 501

57. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

58. Defendants and/or their agents committed abusive acts or practices as defined by W.Va. Code § 46A-6F-601(a)(2) because they engaged Plaintiff repeatedly or continuously with behavior a reasonable person would deem to be annoying, abusive, or harassing.

59. Defendants and/or their agents committed abusive acts or practices as defined by W.Va. Code § 46A-6F-601(a)(3) because they initiated 1 or more outbound calls to Plaintiff after she had indicated she did not want to receive such calls.

60. Defendants and/or their agents knowingly engaged in the transmission of misleading or inaccurate caller identification information, including, but not limited to, circumventing caller identification technology that allows consumers to identify from what phone number of organization the call has originated from, or to otherwise misrepresent the origin and nature of the solicitation. *See* W.Va. Code § 46A-6F-501(9).

61. Each of Defendants' actions, or those of agents operating on Defendants' behalf, were done willfully or knowingly.

62. Accordingly, Plaintiff is entitled to relief from Defendants as prescribed under W.Va. Code §§ 46A-6F-502 and 701, including actual damages and statutory penalties. Plaintiff is likewise entitled to reasonable attorney's fees under W.Va. Code § 46A-5-104.

WHEREFORE, Plaintiff demands from Defendants statutory penalties

and damages as provided by law, pre- and post-judgment interest, costs, attorney's

fees, and whatever further relief the Court deems appropriate.

**JURY TRIAL DEMANDED.**

DIANA MEY

/s/    Diana Mey
Diana Mey, Pro Se
14 Applewood Drive
Wheeling WV  26003
304-280-1607
diana_mey@comcast.net

11